# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

DAVID R. GRAHAM,

       Plaintiff,

                                        Civil Action 2:20-cv-2476
                                        Judge Edmund A. Sargus, Jr.
                                        Magistrate Judge Elizabeth P. Deavers

    v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, David R. Graham, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF Nos. 13, 14). Plaintiff has not filed a reply memorandum. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

                                          **I.      BACKGROUND**

Plaintiff filed his original application for disability benefits on December 29, 2009, alleging disability beginning January 25, 2008. (R. at 129.) That application was denied initially and upon reconsideration. (*Id*.) On March 15, 2012, Administrative Law Judge ("ALJ") Curt Marceille issued a decision setting forth the following RFC in concluding that Plaintiff was not disabled through that date:

After careful consideration of the entire record, I find that the claimant has the

> residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant requires a cane to walk and is further limited to work involving no climbing of stairs, ramps, ladders, ropes, scaffolds; no kneeling; no more than occasional crouching or crawling; and no working with hazards. The claimant can perform simple, routine, and repetitive tasks; have no more than occasional workplace changes and generally static environment; have no more than occasional and superficial interactions with others in the workplace; and no public interaction.

(R. at 134, 126-145.) The Appeals Council denied review on May 13, 2013, and the ALJ's decision became the final decision of the Commissioner. (R. at 147-152.) Plaintiff did not seek relief at the district court level.

Plaintiff reapplied for disability benefits on January 15, 2014, due to gout, rheumatoid arthritis, osteoarthritis, degenerative disc disease, depression, bilateral torn meniscus, anxiety, degenerative joint disease, edema in bilateral knees, and numbness and tingling in his legs, and alleged an onset date of March 16, 2012 with a date last insured of March 31, 2013. (R. at 2234-235.) That application also was denied initially and upon reconsideration. (R. at 172-178; 180-185.) A hearing was held on March 21, 2016, before ALJ David W. Thompson and on May 16, 2016, ALJ Thompson issued his decision concluding that Plaintiff was not disabled. (R. at 64-125; 19-39.) In reaching this conclusion, ALJ Thompson set forth the following RFC, which did not include a cane restriction:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) … except that the claimant can occasionally lift/carry up to ten pounds, and can frequently lift/carry less than ten pounds. The claimant can stand and/or walk for two hours of an eight-hour workday. The claimant can sit for six hours of an eight-hour workday. The claimant can occasionally climb ramps and stairs, but must avoid ladders, ropes, and scaffolds. The claimant can occasionally kneel, stoop, crouch, and crawl. The claimant can occasionally handle and finger bilaterally.

(R. at 28.) The Appeals Council declined review and the ALJ's decision became the final decision of the Commissioner. On October 26, 2017, Plaintiff, then residing in Lawrence County, filed a Complaint in this Court's Western Division. *Graham v. Comm'r*, Case No. 1:17-cv-718. (R. at 1421-1425.) The Complaint raised one statement of error relating only to Plaintiff's mental health impairments and did not challenge the ALJ's decision not to include a cane use allowance. *Graham v. Comm'r of Soc. Sec.*, No. 1:17-CV-718, 2018 WL 6804132, at *4 (S.D. Ohio Dec. 27, 2018), *report and recommendation adopted,* No. 1:17-CV-718, 2019 WL 975171 (S.D. Ohio Feb. 28, 2019), *order corrected and superseded,* No. 1:17-CV-718, 2019 WL 1084695 (S.D. Ohio Mar. 6, 2019), and *report and recommendation adopted,* No. 1:17-CV-718, 2019 WL 1084695 (S.D. Ohio Mar. 6, 2019). On March 6, 2019, the Court remanded the case back to the Commissioner, finding that the ALJ's decision that Plaintiff did not have a severe mental impairment was not supported by substantial evidence. *Graham v. Comm'r of Soc. Sec.*, No. 1:17-CV-718, 2019 WL 1084695 (S.D. Ohio Mar. 6, 2019).[1]

A second hearing on Plaintiff's most recent application was held on November 7, 2019, before ALJ Thuy-Anh T. Nguyen. (R. at 1256-1297.) On January 13, 2020, ALJ Nguyen issued a decision finding that Plaintiff was not disabled. (R. at 1233-1255.) Plaintiff did not seek relief from the Appeals Council and instead timely commenced the current action. (ECF No. 1.)

---

[1] ALJ Thompson's decision did not become final in light of the Court's remand for further proceedings. *Wireman v. Comm'r of Soc. Sec.,* 60 F. App'x 570, 571 (6th Cir. 2003).

## II.      HEARING TESTIMONY

**A.**    **Plaintiff's Testimony**[2]

Upon examination by his attorney at his most recent hearing, Plaintiff testified as follows. Plaintiff confirmed that he was in a scooter and that he used his scooter when he was on any kind of outing and would be expected to be on his feet for more than 10 or 15 minutes. (R. at 1269.) He explained that he takes his scooter everywhere because of his "inability to be mobile basically." (*Id.*) He recounted that he has had a scooter for 10 or 15 years, receives a new one every four or five years, and that his current scooter was his third one. (*Id.*) He stated that he uses his scooter "a lot more now than [he had] in the beginning." (*Id.*)

Plaintiff further testified that he uses other assistive devices including "canes and grab bars and tub lift and a ramp that they put into [his] front door." (R. at 1270.) Plaintiff stated that he had used canes for 20 years and had used a cane "all the time" from "2012 and up." (*Id.*) According to Plaintiff, he keeps three canes in his truck, has numerous canes in the house, keeps a walker by his bed that he uses "on the real bad days" and it "helps a lot." (*Id.*) He explained that he tries to "maintain as much exercise as [he] possibly can [his] legs … but … can't go past about 15 minutes of time on walking." (*Id.*)

When asked by his counsel to talk about his gout, Plaintiff stated that it "haunts him every day and it's relentless. It's mind-altering." (R. at 1271.) He explained that it is easily aggravated and the shoe inserts he recently had been given at the VA had "aggravated [his] feet

---

[2]The Court limits its analysis of the hearing testimony and medical evidence to the issues raised in Plaintiff's Statement of Errors.

into having gout." (*Id*.) He stated that he was on his seventh day of prednisone for this episode and that the gout had settled in his shoulder. (*Id*.) According to Plaintiff, when he has a flareup or attack of gout in his feet, he "may as well not have a foot at all." (*Id.*) He recounted that during an attack his foot swells and throbs and he is unable to sleep because of the pain. (R. at 1271-1272.) He stated that, after about four consecutive sleepless nights and numbness in his toes, he will "seek the emergency room out" so that "the eight-hour pain shot will at least get [him] one night's rest out of the last five." (R. at 1272.) In response to counsel's question about how frequently he suffered these attacks Plaintiff testified that it "depend[s] on how much activity" he does. (*Id*.) Plaintiff further explained that if he stands for more than 15 minutes, his feet will start getting sore, his body fluid which is full of "crystals" will rush down to his feet, and this will set off a gout attack. (R. at 1273.) He confirmed that when his feet swell he needs to elevate his legs "daily, repetitively" and "hourly" for "45 minutes at least." (R. at 1273-1274.) Plaintiff stated that he has had gout for 32 years and has had side effects from the medication. (R. at 1274.) He also testified that he has "rejected medicines throughout the years" "because of kidney issues" and "stomach problems." (R. at 1275.)

In response to questions about his limitations with standing, Plaintiff testified that he could stand for about fifteen minutes at one time but has to have his cane to help transfer some of the weight to the ground. (R. at 1277-1278.) Plaintiff also stated that without his cane he could only walk five or ten minutes at a time. (R. at 1278.)

### III. RELEVANT MEDICAL RECORDS

In support of his contention of error, Plaintiff cites to progress notes from the Huntington VA Medical Center dated between January 10, 2010 and January 8, 2014. These notes are

5

found at pages 323-643 and 644-887 of the record and cited by the ALJ as Exhibit B1F. These records, as relied upon by Plaintiff, some prior to his alleged onset date and some after his date last insured, indicate the following.

In January 2011, an MRI of Plaintiff's left knee indicated a tear of the posterior horn of the medial meniscus. (R. at 335.) Plaintiff was noted to be using a cane. (R. at 418-419.) In February 2011, an x-ray of Plaintiff's knees revealed mild degenerative changes on the right side and a small suprapatellar effusion. (R. at 330.) At an appointment in April 2011, Plaintiff was observed using a scooter for mobility. (R. at 676.) At a different appointment that same month, Plaintiff was noted as ambulating with a cane. (R. at 698.) At an appointment in November 2011, Plaintiff was reported as having difficulty with his mobility. (R. at 384.)

At an appointment in January 2012, Plaintiff's gait was described as antalgic and he was noted to use a cane to ambulate. (R. at 386-388.) In March 2012, Plaintiff's lower extremities were both reported as weak. (R. at 541.) Progress notes from April 2012, indicate Plaintiff's self-report of a history of falls every six months or so and his use of a one prong cane and power chair. (R. at 483.) At an appointment in September 2012 with Dr. Nagaraja Rao, Plaintiff self-reported a history of chronic back pain that is relieved only by lying down or "sitting propped up using a cane." (R. at 360.) In October 2012, Plaintiff was approved for water therapy because he had been unable to tolerate land-based physical therapy. (R. at 356.)

A progress note from October 3, 2012, indicates a request for a Golden Tech 4-wheel scooter. (R. at 352.)

### IV. ADMINISTRATIVE DECISION

On January 13, 2020, the ALJ issued his decision. (R. at 1233-1255.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013. (R. at 1239.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity during the closed period between his alleged onset date of March 16, 2012 through his date last insured. (*Id.*) The ALJ found that Plaintiff had the severe impairments of gouty arthritis; rheumatoid arthritis; disorders of the spine; status post right knee arthroscopy; left knee medial meniscus tear; pain disorder; obesity; major depressive disorder; and anxiety disorder. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1240.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can occasionally climb ramps and stairs, but must avoid climbing ladders, ropes, and scaffolds. He can occasionally balance, stoop, and crouch, but he can never kneel or crawl. He can frequently handle and finger with the bilateral upper extremities. He cannot work at unprotected heights or with dangerous moving machinery. The claimant is limited to simple, routine, repetitive tasks and occasional interaction with the public, coworkers, and supervisors. He can perform work that is not fast-paced and involves only occasional changes in the work setting.

(R. at 1242.)

Relying on the VE's testimony, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff is able to perform, including polisher, weight tester, and document preparer. (R. at 1247.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id*.)

The ALJ also acknowledged the prior decision from ALJ Marceille and his obligations under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), acq. SSA AR 98-3(6) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), acq. SSA AR 98-3(6). (R. at 1236.) However, the ALJ noted that new and material evidence warranted changes in the findings of fact identified in the prior decision. (*Id*.) Specifically, the ALJ cited clinical findings that supported "improvement in the claimant's gait such that no cane allowance was necessary in the RFC." (*Id*.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances one contention of error: The ALJ's decision should be reversed because the ALJ failed to properly consider whether Plaintiff's assistive devices were medically

9

necessary. (ECF No. 17, at 6.)³ Specifically, Plaintiff asserts that the record contains medical documentation establishing his need for both a straight cane and a scooter. (ECF No. 17, at 8.)⁴ The Undersigned disagrees.

Turning first to the issue of Plaintiff's need for a cane, as Plaintiff recognizes, pursuant to Social Security Ruling 96-9p ("SSR 96-9p"), clear medical evidence is required before the need for a cane may be incorporated into an RFC finding. SSR 96-9p provides as follows:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996). This has been described as a two-part requirement, *White v. Saul*, No. 1:20-CV-236, 2021 WL 1145463, at *8 (N.D. Ohio Mar. 25, 2021), and the burden is on the Plaintiff to prove through clinical evidence that a cane is medically required. *Kelly J. Taylor v. Commissioner of Social Security,* No. 2:19-CV-4509, 2020 WL 1933580, at *8 (S.D. Ohio Apr. 22, 2020), *report and recommendation adopted sub nom. Taylor v. Comm'r of Soc. Sec.*, No. 2:19-CV-4509, 2021 WL 81602 (S.D. Ohio Jan. 11, 2021). Here, Plaintiff fails on both counts.

First, "'indications in medical records that Plaintiff was using a cane [are] insufficient to establish that the cane was medically required.'" *Rodgers-Eaches v. Comm'r of Soc. Sec.*, No.

---

³ In making this argument, Plaintiff does not assert that the ALJ failed to comply with the principles of *Drummond* in any way. Accordingly, the Court does not construe Plaintiff's argument as relying on *Drummond* despite the Commissioner's interpretation and argument on this issue.

⁴ As emphasized by the Commissioner, the consideration of this issue is confined to the relevant time period between ALJ Marceille's decision dated March 15, 2012 and Plaintiff's date last insured of March 31, 2013. (ECF No. 18, at l.)

10

1:20-CV-69, 2021 WL 164254, at *7 (S.D. Ohio Jan. 19, 2021) (quoting *Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017), *report and recommendation adopted sub nom. Parrish v. Commr. of Soc. Sec.*, 2017 WL 2720332 (N.D. Ohio June 23, 2017)). Moreover, Plaintiff's hearing testimony regarding his use of a cane does not qualify as medical documentation and is not sufficient to establish that a cane was medically required. *White v. Saul*, 2021 WL 1145463, at *8 ("Plaintiff's hearing testimony, on its own, does not qualify as medical documentation and is insufficient to establish that a cane was medically required"). Here, however, Plaintiff offers nothing more than notes and self reports. For example, Plaintiff asserts that, at various appointments in 2011 and early 2012, his use of a cane was "noted" (ECF No. 17 citing R. at 418-419.) Further, he explains that he was "noted to have difficulty with his mobility." (*Id*. citing R. at 384.) Additionally, he points out that examination notes reflect that he was "ambulating with a cane" or "us[ing] a cane to ambulate." (*Id*. citing R. at 698, 388.) His testimony further described his long-standing use of a cane (R. at 1270) but did not indicate that such use was medically required. Under similar circumstances, courts in this Circuit routinely have held that a plaintiff has not carried his burden. *See, e.g., Cantu v. Comm'r of Soc. Sec. Admin.,* No. 3:20-CV-00819-JDG, 2021 WL 2156395, at *17-18 (N.D. Ohio May 27, 2021) (plaintiff did not identify any evidence that meets the standard articulated in SSR 96-9p); *Rodgers-Eaches,* 2021 WL 164254, at *7 (plaintiff's reports to her providers that she was using a cane, and observations of her using a cane, did not satisfy medical documentation requirement); *Forester v. Comm'r of Soc. Sec*., No. 2:16-CV-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017)("Simply because Plaintiff may have been 'using a cane at various times,' does not mean the ALJ was required to include it in Plaintiff's RFC."); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *4 (E.D. Mich. Sept. 25,

2017) (ALJ's conclusion that plaintiff failed to establish need for a cane was reasonable, even though plaintiff testified she was prescribed a cane and documentation showed she received a cane, where there was no specific evidence in the record establishing that she needed the cane). Further, even assuming the notations cited by Plaintiff could be considered sufficient medical documentation, they do not describe the circumstances for which a cane is needed as required by SSR 96-9p. *See White v. Saul*, 2021 WL 1145463, at *9 (citing *Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018)).

In reaching his conclusion that a cane use allowance was not necessary from March 16, 2012 through March 31, 2013, the ALJ noted that Plaintiff's right knee improved after arthroscopy and that he generally exhibited a normal gait. (R. at 1246 citing R. at 361, 470, 532.) Focusing on this statement, Plaintiff attempts to frame his argument here in terms of the ALJ's alleged failure to fulfill his duty to resolve issues of conflicting evidence. (ECF No. 17, at 9.) Plaintiff's effort on this point is to no avail. As discussed above, there simply is no clinical evidence indicating that Plaintiff's cane was medically required. Accordingly, it does not appear that any weighing of the evidence was required and Plaintiff has not demonstrated otherwise.

For these reasons, the Undersigned finds that Plaintiff has failed to demonstrate his cane is medically required under SSR 96-9p during the closed period. Similarly, to the extent, Plaintiff asserts that the medical documentation demonstrates his need for a scooter, that argument fares no better. In support of his position on this issue, Plaintiff cites to progress notes dated October 3, 2013, indicating that a request was made for a scooter. However, "'post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date.'" *Kinney v. Comm'r of Soc. Sec.,* No. 1:19-

CV-604, 2020 WL 5626922, at *6 (W.D. Mich. Sept. 21, 2020) (quoting *Grisier v. Commissioner of Social Security*, 721 Fed. Appx. 473, 477 (6th Cir. 2018)). This limited reference to a request for a scooter contained in Plaintiff's medical progress notes cannot be viewed as "illuminating" his health prior to his date last insured.  Accordingly, Plaintiff's argument that the ALJ erred by not considering the evidence in the record regarding his use of assistive devices is not well taken.

## VII.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.   Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFIRMED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.   *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date: July 6, 2021 /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE